IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN R. TIMMONS, SR.,**  *Plaintiff*,  v.  **CHUBB LTD.,** *et al.*  *Defendants*. | Case No. 2:19-cv-05478-JDW |

## MEMORANDUM

John Timmons and Chubb[1] have very different views of Mr. Timmons as a job applicant. Chubb sees Mr. Timmons as someone with too much experience in the insurance industry to get an entry-level job but also as someone who lacks experience to get an underwriting job. Mr. Timmons thinks his experience makes him an attractive candidate, and he can't accept that a potential employer like Chubb would see it any other way. Because he can't wrap his head around Chubb's view of him, Mr. Timmons assumes that Chubb's unwillingness to hire him must be a product of discrimination. But he does not have evidence to support his theories. In particular, he cannot make out a *prima facie* case of discrimination for any of the 15 job applications at issue in this case. The Court will therefore grant Chubb's summary judgment motion.

---

[1] "Chubb" includes Defendants Chubb Ltd., Chubb Group, and Ace American Ins. Co.

## I. BACKGROUND

### A. Chubb Application Process

Chubb hires people by posting positions online. Applicants can then submit their resume and application, and a Chubb recruiter can review the submissions and select applicants for interviews. Sometimes Chubb posts positions for active vacancies; other times Chubb posts positions for "inactive vacanc[ies]." (ECF No. 34 ¶ 51.) Positions for inactive vacancies are called "evergreen requisitions." (*Id.* ¶¶ 50–52.) Chubb uses evergreen requisitions to "pipeline potential candidates for future openings." (*Id.* ¶ 51.) This means that individuals can submit applications to an evergreen requisition, but there is no active vacancy for them yet.

Chubb hires some entry-level employees through its Chubb Associate Program ("CAP"), which is a "training program that targets individuals who want to get into the insurance industry but do not have substantial insurance experience." (ECF No. 33-1 at 18.) Chubb uses the program to offer "training in particular areas, including developing business acumen and building strong business habits." (*Id.*)

Chubb stores employment applications in its system. Sometimes, a recruiter may consider an applicant for a job that applicant did not apply to if the recruiter thinks the applicant would be a better fit for the second job. It is also possible for Chubb to keep track of the number of times a candidate has applied to Chubb.

### B. Mr. Timmons's Background

Mr. Timmons has worked in the insurance industry for a number of years. He began operating Timmons Reinsurance Solutions, Inc., a reinsurance intermediary

broker around 2003. (ECF No. 42-1 ¶¶ 5, 6.) While Mr. Timmons has not worked in underwriting, in 2015 he received a Chartered Property Casualty Underwriter ("CPCU") designation. The CPCU is a professional insurance designation to demonstrate mastery of underwriting and the insurance industry. (*Id.*)

Beginning in 2010, Mr. Timmons began submitting job applications to companies in the insurance industry. As of 2020, he estimates he applied to 63 positions with Chubb; Chubb estimates he applied to 163 positions. His applications varied. Sometimes he marked his demographics, stating that that he is a white male, and other times, including in 2018, he did not. It appears that Mr. Timmons often submitted a resume listing all of his experience, but sometimes he submitted a dumbed down resume with fewer professional designations on it as well.

### C. The Positions At Issue

In 2018, Mr. Timmons applied to fifteen positions with Chubb, as follows:

- Seven underwriting positions, requisition nos. 315240, 315766, 316413, 318201, 320615, 320729, and 321127. (*See* ECF No. 42-1 at ¶¶ 17.a, 46.) For requisition no. 318201, Chubb did not specify a number of years of experience but stated that it wanted to hire a "skilled Core Commercial Underwriter." (ECF No. 34-3 at 127–28.) For the other positions, Chubb sought individuals with between two and five years of underwriting experience. (ECF No. 34-3 at 130.) Chubb filled requisition 316413 with someone who had worked for three years at Chubb. The Parties did not provide the Court with the race and gender of the

3

successful applicant. It did not fill any of the other positions. It cancelled some and left others posted as evergreen positions.

- Six positions within the CAP, requisition nos. 316446, 316515-17, 317767, and 321021. Chubb filled each CAP position, hiring six individuals: four white men; one white woman; and one man of unspecified race. Two of the men were college age individuals that had interned with Chubb. (ECF No. 33-1 at 18–19.)

- A financial analyst position to support a reinsurance entity, requisition no. 321144. Chubb filled that position with a financial accountant.

- A risk consultant position, requisition no. 317892. Chubb hired a 52-year-old man with 11 years of experience at Chubb. Mr. Timmons admits that his age did not play a role in that hiring decision and that the candidate "had had some more experience doing that sort of loss control job." (ECF No. 34-1, Ex. B at 222-23.)

**D.    Administrative And Procedural History**

On November 2, 2018, Mr. Timmons dual-filed an administrative charge with the EEOC and PHRC, alleging gender, race, and age discrimination. On November 21, 2019, Mr. Timmons filed this action, asserting claims for race and gender discrimination in violation of Title VII, and age discrimination under the Age Discrimination in Employment Act. After discovery, Chubb moved for summary judgment on each of Mr. Timmons's claims. The Motion is now ripe for disposition.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). A plaintiff may not rely on evidence to overcome summary judgment that would not be admissible at trial. *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009).

### III. DISCUSSION

#### A. Scope Of Case

##### 1. Prior job applications

Before a plaintiff can file a federal suit alleging Title VII or ADEA discrimination, he must exhaust administrative remedies by filing a charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e–5(e)(1); *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 383 (3d Cir. 2007) (ADEA). A plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice before filing a complaint in court. *See* 42 U.S.C. § 2000e-5(e)(1), (f)(1); *see Ruehl*, 500 F.3d at 383. This time limitation is analogous to a statute of limitations. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109–10, 113 (2002).

Mr. Timmons dual-filed his complaint with the EEOC and PHRC on November 2, 2018. He only complained about discrimination beginning on January 29, 2018. Those claims are within the 300-day deadline and therefore timely. Mr. Timmons cannot now complain about acts that he did not raise before the EEOC and that are now time barred. Nonetheless, Mr. Timmons requests that the Court "extend[] the discrimination complaint back to at least 2015" and "allow the expansion of his Complaint." (ECF No. 42 at 7.) The Court construes this as a request to permit Mr. Timmons to complain about Chubb's rejection of his prior applications. The Court declines to do so because any such claim is time-barred.

The continuing violations doctrine could not save any claim based on events prior to January 29, 2018. The continuing violation doctrine allows a plaintiff to

6

aggregate a series of discriminatory acts that are not individually actionable. *See O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). But the Third Circuit has categorized refusal to hire as a discrete act, and the only adverse employment acts at issue here are refusals to hire. *See id*. Because Mr. Timmons cannot aggregate refusal-to-hire claims, it would be futile for Mr. Timmons to take discovery about older, time-barred events.

### 2. Discovery into the CAP

Mr. Timmons asks the Court to "re-open discovery" into the "curriculum for the Chubb Associate Program" so he can show that the CAP provides training that is equivalent to his CPCU designation. (ECF No. 42 at 12.) But Mr. Timmons has known of the CAP since he filed his complaint. He had more than six months to take discovery about the Program. To modify a scheduling order, which is in effect what Mr. Timmons is requesting, a party must demonstrate "good cause." Fed. R. Civ. P. 16(b)(4). To establish good cause in this context, a party must demonstrate that it could not reasonably meet the deadlines in the scheduling order. *See Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). Mr. Timmons offers no explanation as to why he was unable to seek information on the program during his allotted discovery time. He was proceeding *pro se*, but that does not excuse him from the requirement to take discovery during the relevant time period. In the absence of a showing of good cause, the Court will not re-open discovery.

### B.     Disparate Treatment Claims

#### 1.     Applicability of *McDonnell-Douglas* standard

All of Mr. Timmons's claims, whether arising under Title VII or the ADEA, are disparate treatment claims.[2] Courts analyze disparate treatment claims under the familiar three-step *McDonnell-Douglas* framework. *See Glanzman v. Metro. Mgt. Corp.*, 391 F.3d 506, 509 n.2 (3d Cir. 2004); *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004). The standard applies in failure to hire cases like this one, as it does in other disparate treatment cases. *See, e.g., Waris v. Heartland Home Healthcare Svcs.*, 365 F. App'x 404-05 (3d Cir. 2010); *McKenna v. Pacific Rail Svc.*, 32 F.3d 820, 825-26 (3d Cir. 1994); *Austin v. Giant Food Stores*, Civ. A. No. 20-cv-2050, 2020 WL 7479563, at * 4 (E.D. Pa. Dec. 18, 2020).

Mr. Timmons urges the Court not to apply the *McDonnell-Douglas* framework, arguing that it is "not the only standard that could apply." (ECF No. 42 at 8.) That argument rests on a fundamental misunderstanding of the way that the justice system works. This Court is an inferior court, and the Supreme Court's precedents—including *McDonnell-Douglas*—bind the Court. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989). The Court is not free to disregard precedent. Mr. Timmons's rationale for departing from the standard is also unpersuasive. He complains that the

---

[2] Although Mr. Timmons references statistical evidence to prove that Chubb's hiring decisions occurred in discriminatory circumstances, he does not assert a disparate impact claim in his Complaint, nor does he mention it in his summary judgment opposition.

8

*McDonnell-Douglas* test does not require a company to defend its job descriptions and suggests that the Court should engage in a "thorough evaluation of transferable and relevant skills" in the insurance industry. (*Id.* at 9-10.) But the Court does not sit as a super-HR department. Chubb and other employers can decide for themselves what qualifications apply to a particular job. If those qualifications result in a statistically-significant harmful effect on a protected class, then the remedy is a disparate impact claim—not the disparate treatment claims that Mr. Timmons asserts in this case.[3]

### 2. Application of *McDonell-Douglas* standard

Under the *McDonnell-Douglas* framework, an employee must first establish a *prima facie* case of discrimination. *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (*per curiam*). If the employee makes out a *prima facie* case of discrimination, the employer then has a burden of production (but not persuasion) to articulate a legitimate, nondiscriminatory reason for its adverse employment decision. *Id.* If the employer articulates a legitimate reason, the employee must then proffer evidence to allow a reasonable factfinder to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual. *See id.* Chubb only makes arguments about the *prima facie* case, so that is the only step of the burden-shifting framework that the Court will consider.

---

[3] The Court recognizes the challenge that a *pro se* party like Mr. Timmons faces in navigating some of these distinctions. For that reason, the Court repeatedly encouraged Mr. Timmons to obtain counsel to represent him. He did not, either because he could not find a lawyer to take his case or because he was not satisfied with the lawyers who would take his case.

To establish a *prima facie* failure to hire claim, a plaintiff must show that (a) he belongs to a protected class, (b) he applied to and was qualified for a job for which the employer was seeking applicants, (c) the employer rejected him, and (d) after his rejection, either (i) the position remained open and the employer continued to seek applicants, or (ii) the employer filled the position with a person not belonging to the protected category. *See Austin*, 2020 WL 7479563, at * 4. As part of this analysis, a plaintiff must show that a decisionmaker had knowledge of the plaintiff's status in a protected class. *See Geraci v. Moody-Tottrup Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996).

### a.     Membership in protected class

Mr. Timmons has established this element for all of the positions at issue. He was over 40, white, and male, all protected classes for these purposes. Chubb does not dispute this but claims that it did not know about his membership in those classes when it made those hiring decisions. Giving Mr. Timmons the benefit of all reasonable inferences, there is room for the possibility that Chubb knew. Although Mr. Timmons did not identify his race or gender on the job applications at issue, he had done so in prior applications. Chubb retains an individual's prior applications and may review or track prior applications if the individual submits new applications. Taking that evidence in the light most favorable to Mr. Timmons, the Court can assume that Chubb knew Mr. Timmons's age, race, and gender when it reviewed Mr. Timmons's applications given the large number of prior applications he submitted. In

addition, the resume gave Chubb a reason to discern his gender (based on his name) and his age (based on his years of graduation).

### b. Application and qualification

"[I]f a plaintiff is not qualified for the job he seeks" a discrimination claim can be rejected "without the heavy lifting that is required if a prima facie case is made out." *Dorsey v. Pittsburgh Assocs.*, 90 F. App'x 636, 639 (3d Cir. 2004). This inquiry focuses on objective criteria rather than subjective assessments. *See id.* "If a plaintiff cannot show he is objectively qualified for the job, summary judgment is appropriate." *Id.* In considering an applicant's qualifications, an employer can consider the applicant's experience, even though experience and age are often correlated. *See Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 789 (3d Cir. 2007) (citing *Hazen Paper Co. v. Biggins*, 507 US 604 (1993). However, employers may not use experience as a proxy for age. *Ins. Co. of N. Am.*, 49 F.3d at 1421 (citing *Taggart v. Time Inc.*, 924 F.2d 43, 48 (2d Cir. 1991)). Mr. Timmons's claims about the underwriting and CAP positions break down at this prong in the analysis. (Chubb has not made any arguments about Mr. Timmons's qualifications for other positions, so the Court does not tackle that question.)

***First***, Mr. Timmons has not shown he was qualified for the underwriting positions. Six of the positions to which he applied required between two and five years of underwriting experience. The seventh position did not require a specific number of years but sought a "skilled Core Commercial Underwriter." (ECF No. 34-3 at 127–28.)

Mr. Timmons acknowledges he has no underwriting experience. That concession, alone, dooms his claims about the underwriting jobs.

Mr. Timmons argues he was qualified for those jobs even without the credentials that Chubb required, in part based on his CPCU certification. He might be right, and a reasonable company might accept Mr. Timmons's credentials and industry experience as a substitute for specific underwriting experience. But Chubb did not have to do so, and no legal principle permits the Court to force Chubb to equate years of work experience with a particular professional designation. *See Abels v. DISH Network Serv., LLC*, 507 F. App'x 179, 185 (3d Cir. 2012) ("the factual dispute is whether the discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.") (internal citation omitted); *Longstreet v. Holy Spirit Hosp.*, 67 F. App'x 123, 126 (3d Cir. 2003) ("[T]he actual qualifications of a position is not a matter that the courts should determine.").

**Second**, Mr. Timmons has not shown he was qualified for the CAP program. It is undisputed that Chubb intends that program to enable applicants with no insurance industry experience to break into the field. Mr. Timmons has insurance industry experience, and he is therefore overqualified for the CAP program. An overqualified applicant is, for these purposes, unqualified. *See Johnson v. Cook Inc.*, 327 F. App'x 661, 664–65 (7th Cir. 2009); *E.E.O.C. v. Ins. Co. of N. Am.*, 49 F.3d 1418, 1421 (9th Cir. 1995); *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006).

Mr. Timmons has not offered any evidence that Chubb uses experience as a proxy for age discrimination. He offers some statistics to show that most of the

members of the CAP program are much younger than he is. But that correlation between youth and lack of experience does not, on its own, suggest discrimination. Nor does the fact that Chubb hired two younger men for CAP positions instead of Mr. Timmons. Both of those college-age individuals had ties to the company in the form of internships and far less insurance-industry experience than Mr. Timmons.

Ultimately, Mr. Timmons's own submission demonstrates his lack of qualification for the CAP program. As Mr. Timmons acknowledges, the program is a broad-based introduction to all aspects of the insurance industry, "such as claims, finance/accounting, loss control, and the list goes on." (ECF No. 42 at 13.) Mr. Timmons explains that he is not interested in any of those aspects of the curriculum. He just wants to learn about underwriting, including the "policies and procedures of underwriting risks for Chubb, the use of underwriting manuals and the application of these guidelines to insurance risks where Chubb has an appetite." (*Id.*) Chubb does not have to open its CAP program to people like Mr. Timmons, who want to use it for a specific purpose, rather than for its entire curriculum. Nor does the law require Chubb to offer an underwriting-only training program for people like Mr. Timmons.

### c. Rejection

Chubb did not hire Mr. Timmons for any of the positions to which he applied, and it does not argue about the rejection factor, so the Court will assume Mr. Timmons has satisfied it.

### d.   Post-rejection conduct

Mr. Timmons cannot prevail on his claims concerning positions that Chubb did not fill and for which it cancelled the listing because Chubb neither continued to seek applicants nor hired someone outside a protected category. These include several of the underwriting positions. Mr. Timmons suggests that Chubb has engaged in some sort of shell game with the positions that it lists so that it can "make a 'job' disappear in order to lower [its] liability in an employment claim." (ECF No. 42 at 14.) But he has no evidence to support that assertion, nor does he have evidence to create a factual dispute about whether Chubb filled those positions.

Mr. Timmons also has no evidence to support his claims for the financial analyst and risk consultant positions. Chubb filled the financial analyst position with someone with an accounting background, something that Mr. Timmons does not have. He might take issue with Chubb's weighing of that qualification, but he has not offered any evidence to suggest that it was discriminatory. For the risk consultant position, Chubb hired someone with better qualifications (as Mr. Timmons admits) who also falls in the same protected class as Mr. Timmons.

More broadly, Mr. Timmons arguments rest on suspicions and political views, but not on facts about Chubb's decision-making. For example, Mr. Timmons argues that he "is just one example of how corporations actually treat . . . white males" and argues that Chubb's "affinity for diversity, inclusion, and equity . . . in practice means 'no white males need apply.'" (ECF No. 42 at 3, 10.) But he offers no evidence other than his subjective belief to tie Chubb's rejection of his applications to his gender and

14

race. And the evidence on the record reveals that of the nine positions Chubb filled, it hired a majority of white and/or male individuals.

## IV.  CONCLUSION

Mr. Timmons could fairly complain that he is stuck in a Catch-22. His experience does not qualify him for an underwriting position, but his experience makes him ineligible for an entry-level program so he can learn how to be an underwriter. But he needs more than supposition to maintain a discrimination claim. He needs evidence, and he doesn't have any. So the Court will grant Chubb's summary judgment motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

December 1, 2021